**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Wayne T. SCHMUCK,
Defendant–Appellant.**

No. 84–1317.

United States Court of Appeals,
Seventh Circuit.

Reheard En Banc June 9, 1986.

Decided Jan. 21, 1988.

Peter L. Steinberg, Cambridge, Mass., for defendant-appellant.

John W. Vaudreuil, Asst. U.S. Atty., John R. Byrnes, U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before BAUER, Chief Judge, CUMMINGS, WOOD, CUDAHY, POSNER, COFFEY, FLAUM, EASTERBROOK, and RIPPLE, Circuit Judges, and SWYGERT[*] and FAIRCHILD, Senior Circuit Judges.

FAIRCHILD, Senior Circuit Judge.

In *United States v. Schmuck*, 776 F.2d 1368 (7th Cir.1985), a divided panel decided that under the facts of this mail fraud prosecution, the offense of knowing and

---

[*] Senior Circuit Judge Swygert heard oral argument and voted at the post-argument conference to reverse, adhering to the reasons stated in his opinion herein for the panel. 776 F.2d 1368. Because of illness, however, he has not participated further.

willful odometer alteration was a lesser included offense within the charged offense of mail fraud. Defendant's conviction was reversed, therefore, because it was error to refuse an instruction under Rule 31(c), F.R.CRIM.P., on the possibility of finding defendant guilty of the odometer offense. Although odometer alteration is not a statutory element of mail fraud, the panel, relying on *United States v. Whitaker*, 447 F.2d 314 (D.C.Cir.1971), held that there is an inherent relationship between mail fraud and the "fraud" that underlies the mail fraud offense. 776 F.2d at 1371. Accordingly the odometer offense proved by the evidence constituted a lesser included offense for the purpose of Rule 31(c).

■ The panel decision was vacated and rehearing *en banc* granted. *United States v. Schmuck*, 784 F.2d 846 (7th Cir.1986). We now reject the *Whitaker* doctrine and decide that the odometer offense, though proved, was not a lesser included offense, or, as Rule 31(c) says "an offense necessarily included in the offense charged." All other significant claims raised were correctly decided adversely to defendant in Part I of Judge Swygert's opinion, 776 F.2d at 1369–70. We now adopt Part I and affirm.

## I

Defendant Schmuck was convicted, after a jury trial, of 12 counts of mail fraud. Each count of the indictment alleged a scheme by Schmuck to defraud purchasers of used automobiles by representing that the automobiles had substantially less mileage than was true. Schmuck would purchase automobiles, cause their odometer readings to be altered, offer them to dealers, and provide purchasing dealers with an odometer statement reflecting the false mileage. The dealers would sell the cars to retail customers. Both the dealers and the customers would rely on the false readings and pay more than if readings had not been

reduced. In order to obtain titles in the names of their customers, the dealers would mail Wisconsin title applications to the Wisconsin Department of Transportation. Each count of the indictment alleged the mailing of an application for title for an automobile by a dealer on a specified date. Five different dealers were named; three dealers made only one mailing, one made four, and one five. It was charged that Schmuck caused each mailing for the purpose of executing the scheme.

Pursuant to Rule 31(c), defendant moved prior to trial for an instruction that would have permitted the jury to convict him of odometer alteration as a lesser included offense of mail fraud, presumably on each count. That motion was denied. He was convicted and appealed.

In reversing and remanding for a new trial, the panel rejected the "traditional" definition of a lesser included offense, in favor of the "inherent relationship" approach first expounded in *United States v. Whitaker*, 447 F.2d 314 (D.C.Cir.1971). The traditional (elements) test requires identity of the elements of the two offenses, such that some of the elements of the crime charged themselves comprise a separate, lesser offense; to be necessarily included, the elements of the lesser offense must be a subset of the elements of the charged offense. *See Sansone v. United States*, 380 U.S. 343, 349–50, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965); *Berra v. United States*, 351 U.S. 131, 134, 76 S.Ct. 685, 688, 100 L.Ed. 1013 (1956); *United States v. Campbell*, 652 F.2d 760, 762 (8th Cir. 1981); *Government of the Virgin Islands v. Parrilla*, 550 F.2d 879, 881 (3rd Cir. 1977). Thus where the lesser offense requires an element not required for the greater offense, an instruction should be refused.[1]

---

1. Several courts have listed five conditions to be met where a Rule 31(c) instruction is requested. The second is "the elements of the lesser offense must be identical to part of the elements of the greater offense" and the fifth "in general the chargeability of lesser included offenses rests on a principle of mutuality, that if proper, a charge may be demanded by either the prosecution or defense." *Whitaker*, 447 F.2d at 317; *United States v. Campbell*, 652 F.2d 760, 761 (8th Cir. 1981); *United States v. Chapman*, 615 F.2d 1294, 1299 (10th Cir.), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2947, 64 L.Ed.2d 827 (1980); *but see* n. 5 *infra*, as to Tenth Circuit position. Another

Broadly speaking, there are two elements of an offense under the mail fraud statute: (1) having devised or intending to devise a scheme to defraud (or to perform specified fraudulent acts); and (2) use of mail for the purpose of executing the scheme or attempting to do so.[2] It is not required that any part of the contemplated scheme be performed, although in practice fraudulent conduct usually is proved in order to establish the scheme. The odometer offense consists of knowingly and willfully altering or causing alteration of an odometer with intent to change the number of miles indicated.[3] Each statute requires proof of facts not required by the other. The two offenses are separate. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932).

In determining, for this purpose, the elements of the offense charged, the ordinary focus is upon the statute defining the offense. Where the statute prescribes an element in general language, capable of wide variation in types of conduct, e.g., mail fraud, falsification (18 U.S.C. § 1001), continuing criminal enterprise (21 U.S.C. § 848), RICO (18 U.S.C. § 1963), failure to perform any of several types of statutory duty (e.g., 26 U.S.C. § 7203) there is logical appeal for the proposition that the terms of the indictment will narrow the scope of the elements to be examined. *See United States v. Stavros*, 597 F.2d 108, 110 (7th Cir.1979); *but see United States v. Kimberlin*, 781 F.2d 1247, 1257 n. 10 (7th Cir. 1985). Given the present indictment, however, alleging as one element devising a scheme to defraud purchasers of automobiles with altered odometers, knowingly and willfully causing an odometer to be altered is not identical to the element of having devised the scheme.

The District of Columbia Circuit rejected strict comparison of elements in favor of inquiry whether there was an "inherent relationship" between the crime charged and a lesser offense proved at trial. The defendant in *Whitaker* had been charged with first degree burglary, and his request for an instruction permitting conviction of the lesser offense of unlawful entry was denied, because the District of Columbia Code did not exclusively require unlawful entry as an element of first degree burglary, and therefore unlawful entry would not be a lesser included offense under the traditional test. However, because the proof showed that defendant had, in fact, committed the burglary by means of an unlawful entry, in reversing and remanding for a new trial, the court held that

[a] more natural, realistic and sound interpretation of the scope of "lesser included offense," in line with our own views on the subject, is that defendant is entitled to invoke Rule 31(c) when a lesser offense is established by the evidence adduced at trial in proof of the greater offense, with the caveat that there must also be an "inherent" relationship between the greater and lesser offenses, *i.e.*, they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes though not necessarily invariably,

---

formulation is that the lesser offense must be such that it is impossible to commit the greater offense without having committed the lesser. *Government of Virgin Islands v. Aquino*, 378 F.2d 540, 554 (3rd Cir.1967). "The lesser included offense doctrine does not apply where the lesser offense includes an element, such as possession, not required for the greater offense." *Campbell*, 652 F.2d at 763.

**2.** 18 U.S.C. § 1341 provides:
   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be

or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**3.** 15 U.S.C. § 1984 provides:
   No person shall disconnect, reset, or alter or cause to be disconnected, reset, or altered,

proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.

447 F.2d at 319.

The *Whitaker* court went on to note that the Constitution and the common law require that the charge in the indictment give the defendant notice that he could also be convicted of any lesser included offenses, if the evidence so warrants. The prosecution as well as the defendant may seek an instruction pursuant to Rule 31(c) under the traditional test, because all elements of the lesser included offense have, by definition, been charged. *Whitaker* dispensed with the mutuality requirement, because of "considerations of justice and good judicial administration.... [T]he defense ought not to be restricted by the stringent constitutional limits upon the prosecutor's right ... [and] doubt as to whether the prosecution could rightfully have requested such a charge should not bar the charge being given at the request of the defense." *Id.* at 321.

Applying the *Whitaker* approach, the panel in the present case concluded that

> there is an inherent relationship between mail fraud and the "fraud" that underlies the mail fraud offense.... [I]t can generally be expected that proof of mail fraud will entail proof of a completed underlying "fraud," although this is certainly not always true.... An instruction on odometer tampering simply informs the jury that the defendant's conduct is less serious if it does not entail a sufficient abuse of the mails to come within the mail fraud statute and encourages the jury to make an informed judgment as to the degree of culpability.

776 F.2d at 1371.

the odometer of any motor vehicle with intent to change the number of miles indicated thereon.

§ 1990c(a) prescribes a misdemeanor penalty for knowing and willful violation of any provision of the subchapter, including § 1984.

4. The author of this opinion also adheres to his previously expressed view that there is no inherent relationship between odometer alteration and mail fraud even if the *Whitaker* doctrine

Having found the requisite relationship between odometer alteration and mail fraud, the panel turned to the second requirement of the right to a lesser included offense instruction: whether the proof of the element necessary for the greater crime but not for the lesser crime is sufficiently in dispute so that a rational jury could find the defendant not guilty of the greater but guilty of the lesser. *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973); *Sansone v. United States,* 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965); *Berra v. United States,* 351 U.S. 131, 134, 76 S.Ct. 685, 688, 100 L.Ed.2d 1013 (1956); *United States v. Medina,* 755 F.2d 1269, 1273 (7th Cir.1985). Whatever the test used to determine whether one offense is included within another, there is agreement that there must be a separable issue in the case as to the distinguishing element. *Cf., e.g., United States v. Pino,* 606 F.2d 908, 917 (10th Cir.1979) (inherent relationship approach) with *United States v. Campbell,* 652 F.2d 760, 763 (8th Cir.1981) (traditional test). The panel held that the jury could have rationally found that the mailings were counterproductive to the fraud because they brought the fraudulent readings to the authorities' attention, or that the mailings were too tangential to the success of the scheme to be deemed "in furtherance" of the scheme.

## II

### A. *Rule 31(c).*

█ We reject the inherent relationship test,[4] and hold that an offense is necessarily included within another for the purpose of Rule 31(c) only when the elements of the lesser offense form a subset of the elements of the charged offense.[5] The ele-

were to prevail. 776 F.2d at 1373–75, Fairchild, J., concurring in part, dissenting in part.

5. The Second Circuit states the test in terms of elements. *See United States v. Lo Russo,* 695 F.2d 45, 52 n. 3 (2d Cir.1982), *cert. denied sub nom. Errante v. United States,* 460 U.S. 1070, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983). We have found no case, however, where the Second Circuit has rejected the *Whitaker* approach. The Third Circuit states the elements test and asserts

ments approach is grounded in the terms and history of Rule 31(c), comports with the constitutional requirement of notice to defendant of the potential for conviction of an offense not separately charged, permits a greater degree of certainty in the application of Rule 31(c), and harmonizes the concept of "necessarily included" under Rule 31(c) with that of a lesser included offense where the issue is double jeopardy.

Although the Supreme Court has not spoken directly to this issue,[6] we believe that decisions involving Rule 31(c) motions suggest the Court's adherence to the traditional method. In *Keeble v. United States*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), the Court held the defendant entitled to an instruction on a lesser included offense. The Court compared the statutory elements of the offense charged—assault with intent to commit serious bodily injury—with those of the offense on which an instruction was sought—simple assault—stating

> an intent to commit serious bodily injury is a necessary element of the crime with which petitioner was charged, but not of the crime of simple assault. Since the nature of petitioner's intent was very much in dispute at trial, the jury could rationally have convicted him of simple

assault if that option had been presented. *Id.* at 213, 93 S.Ct. at 1998. The Court did note the *Whitaker* decision and that it had dispensed with mutuality as a necessary prerequisite to the defendant's right to a lesser included offense instruction. The Court found it unnecessary to decide that question. *Id.* at 214 n. 14, 93 S.Ct. at 1998 n. 14.

Similarly, in *Sansone v. United States*, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965), the elements of violation of § 7201 of the Internal Revenue Code of 1954, willful tax evasion, were compared with those of § 7207, willful filing of a fraudulent or false return, and § 7203, willful failure to pay taxes when required, to determine whether the latter misdemeanors were offenses included within the felony charged under § 7201. The Court determined that petitioner was not entitled to a lesser included offense instruction because on the facts of the case, the three statutes covered the same ground. The Court said that "§ 7201 necessarily includes among its elements actions which, if isolated from the others, constitute lesser offenses" and instruction should be given if a jury could rationally find that "although all the ele-

---

specifically "[t]he elements of the offense are compared *in the abstract*, without looking to the facts of the particular case." *Government of Virgin Islands v. Joseph*, 765 F.2d 394, 396 (3rd Cir.1985). The Eighth Circuit has adhered to the elements test, noting, but taking no position on, the question of abandoning mutuality. *United States v. Campbell*, 652 F.2d 760, 762–63 (8th Cir.1981).

Decisions of the Fourth Circuit, *see United States v. Carter*, 540 F.2d 753, 754 (4th Cir.1976), and the Fifth Circuit, *see United States v. Williams*, 775 F.2d 1295, 1302 (5th Cir.1985), *cert. denied*, 475 U.S. 1089, 106 S.Ct. 1477, 89 L.Ed.2d 732 (1986), are consistent with the elements approach.

Circuits adopting the inherent relationship test are the District of Columbia, *Whitaker*, 447 F.2d 314 (D.C.Cir.1971); and the Ninth, *United States v. Martin*, 783 F.2d 1449, 1451–53 (9th Cir.1986).

The Tenth Circuit adopted the *Whitaker* doctrine in a 1979 decision, *United States v. Pino*, 606 F.2d 908, 914–17 (10th Cir.1979). In a 1980 decision, the court stated the traditional test, including the requirement of mutuality. *United States v. Chapman*, 615 F.2d 1294, 1298–99 (10th Cir.), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2947,

64 L.Ed.2d 827 (1980). In 1982, the court applied the *Whitaker* doctrine, *citing Pino*, but not *Chapman. United States v. Zang*, 703 F.2d 1186, 1196 (10th Cir.), *cert. denied sub nom. Porter v. United States*, 464 U.S. 828, 104 S.Ct. 103, 78 L.Ed.2d 107 (1983). *Zang* happened to be a prosecution for mail fraud. The scheme to defraud involved overcharging for crude oil by miscertification of the "tier" of the oil. Such miscertification was a violation of EPA regulations, and the court found this violation was not a lesser included offense because there was no inherent relationship between it and mail fraud. In 1987, the Tenth Circuit relied on *Pino* and *Whitaker* in affirming the conviction of a lesser offense, one element of which was not included in the offense charged. *USA v. Cooper*, 812 F.2d 1283 (10th Cir.1987). The dissenting judge would approve the *Whitaker* doctrine where a defendant requested the instruction, but concluded that in the case before the court, defendant had been convicted of an offense not charged.

6. The Court has articulated a statutory elements test for a lesser included offense for double jeopardy purposes. *See, infra*, p. 390.

ments of § 7201 have not been proved, all the elements of one or more lesser offenses have been" proved. *Id.* at 351, 85 S.Ct. at 1010; *see also Berra v. United States*, 351 U.S. 131, 134, 76 S.Ct. 685, 688, 100 L.Ed. 1013 (1956) ("where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justified it, would no doubt be entitled to an instruction").

These cases counsel in favor of the elements test because the Court examined and compared statutory elements in deciding whether the lesser offense was necessarily included in the offense charged. The decisions nowhere suggest any different inquiry into the relationship between offenses, nor any relaxation of the traditional test where a lesser offense proved could be deemed inherently related to the charged offense.

The statutory elements test is also faithful to the text of Rule 31(c), where the critical phrase is "necessarily included in the offense charged." The inherent relationship approach in effect reads out "necessarily included in" and substitutes something like "factually related to and serves the same policy goals as" the charged offense. Neither the court in *Whitaker* nor any decision adopting its analysis has addressed how the language of the Rule gives rise to the inherent relationship test.

The text of the Rule makes no distinction between a motion made by the defendant or by the government. Yet the inherent relationship approach requires that motions by the government and the defendant be treated differently, because the charge of the greater offense does not give notice that defendant is facing a charge of a lesser offense all the elements of which are not identical to elements of the charged offense. If the determination whether the crimes are sufficiently related is not made until all the evidence is developed at trial, the defendant may not have had notice constitutionally sufficient to support an instruction at the prosecution's request.

Thus, the relationship test dispenses with the requirement of mutuality without explaining how the text of the Rule supports a different result depending upon who makes the motion.

Moreover, the history of the Rule suggests that it codified the traditional approach. "At common law the jury was permitted to find the defendant guilty of any lesser offense necessarily included in the offense charged. This rule originally developed as an aid to the prosecution in cases in which the proof failed to establish some element of the crime charged." *Beck v. Alabama*, 447 U.S. 625, 633, 100 S.Ct. 2382, 2387, 65 L.Ed.2d 392 (1980); *United States v. Cova*, 755 F.2d 595, 597 (7th Cir. 1985); *see* 2M Hale, Pleas of the Crown 301–02 (1736); *Rex v. Withal & Overend*, 168 Eng.Rep. 146 (1772). In 1872, this concept was enacted as a statute,[7] now contained in Rule 31(c). The advisory Committee Notes state that the Rule is a "restatement of existing law." *See Keeble*, 412 U.S. at 208 n. 6, 93 S.Ct. at 1995 n. 6. Thus, there is no indication that the Rule was intended to abrogate the traditional approach to lesser included offenses, including the availability of an instruction in aid of the Government, nor can the Supreme Court's recognition of the defendant's right to an instruction be read as an endorsement of any nonmutual restrictions on the Government.

A significant consideration is the inherent relationship test's lack of certainty and predictability. *See United States v. Johnson*, 637 F.2d 1224, 1238 (9th Cir.1980) (statutory approach "may be appealing in its promise of certainty and intellectual purity"). Finding an inherent relationship requires a determination that the offenses relate to the same interests and that "in general" proof of the lesser "necessarily" involves proof of the greater. *Whitaker*, 447 F.2d at 319. These new layers of analysis add to the uncertainty of the propriety of an instruction in a particular case: not only are there more issues to be resolved, but correct resolution involves

---

7. "[I]n all criminal cases the defendant may be found guilty of any offence the commission of which is necessarily included in that with which he is charged in the indictment...." 17 Stat. 197, 198 (1872).

questions of degree and judgment, with the attendant probability that the trial and appellate courts may differ.

Another problem with relaxation of the traditional test is that relaxation may well permit defendants to seek a lenient outcome by requesting a lesser included offense instruction on every lesser offense that could possibly be made out from the evidence. This tendency to misuse the Rule was recognized in *Whitaker,* and is the reason why the *Whitaker* court required that there must be an inherent relationship between the lesser offense and the offense charged. 447 F.2d at 319.

We find, on balance, no persuasive reason to substitute the *Whitaker* doctrine for the traditional approach.[8]

### B. *Double Jeopardy and Cumulative Punishment.*

Rule 31(c) uses the language, "an offense necessarily included in the offense charged." Many of the decisions on a Rule 31(c) problem use the term "lesser included offense." The "lesser included offense" concept is also significant in determining certain claims of double jeopardy or unlawful cumulative punishment. *See Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

It seems desirable that, as nearly as possible, the terminology should have the same meaning in both contexts. Using the elements test for Rule 31(c) problems at least approaches keeping the same meaning.

It is at least arguable that in the double jeopardy and cumulative punishment contexts the requisite identity of elements is to be determined solely from comparison of the two statutes, and that the indictment does not narrow the type of elements to be examined. *Brown,* 432 U.S. at 168, 97 S.Ct. at 226; *Blockburger v. United*

States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); *United States v. Woodward,* 469 U.S. 105, 108, 105 S.Ct. 611, 612, 83 L.Ed.2d 518; *United States v. Kimberlin,* 781 F.2d 1247, 1255-57 (7th Cir.1985), *cert. denied,* —— U.S. ——, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986). The focus is "on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." *Illinois v. Vitale,* 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980). We need not decide in the case before us whether the allegations of the indictment will properly narrow the scope of the statutory elements to be examined in a given case.

The judgment appealed from is AFFIRMED.

FLAUM, Circuit Judge, with whom CUDAHY, Circuit Judge, joins, dissenting.

I do not agree with the majority's conclusion that the use of the "inherent relationship" test in determining when to give a lesser included offense instruction contravenes either the language or purpose of Federal Rule of Criminal Procedure 31(c). Accordingly, I would leave *United States v. Cova,* 755 F.2d 595 (7th Cir.1985), and its predecessors intact as the law of this circuit. Applying that test, I conclude that the district court erred in denying the defendant's requested lesser included offense instruction on odometer tampering.

### I.

It seems to me inherently contradictory to discuss the appropriateness of giving any jury instruction without reference to the evidence adduced at trial, which will always permit the most complete assessment of what instructions the record will support. Nonetheless, the majority concludes that to do so would violate the text of Rule 31(c), which provides in relevant

---

**8.** In *United States v. Cova,* 755 F.2d 595 (7th Cir.1985), defendants were charged with conspiracy to distribute cocaine. The district court found insufficient evidence, but submitted an amended charge of conspiracy to possess, and defendants were convicted. Although there was no discussion of *Whitaker,* this court affirmed, holding that conspiracy to possess (proved) was a lesser included offense of the charged conspir-

acy to distribute. *Id.* at 599. Because it is possible for persons acquiring lawful possession to conspire to distribute, the elements test seems not to have been fulfilled. To the extent that *Cova* stands for a permitted departure from the elements test, it is overruled. *See also* reference to *Cova* in *United States v. Kimberlin,* 781 F.2d 1247, 1256-57, and n. 10.

part that "[t]he defendant may be found guilty of an offense necessarily included in the offense charged...." The rule does not specifically mention instructions. Nevertheless, we know they are necessary to inform the jury of the existence and elements of appropriate offenses. None of the reasons advanced by the majority persuade me that a more constricted analysis of whether an instruction is supportable is necessary or even desirable simply because the proposed instruction presents the jury with an optional lesser charge. If the record fairly and rationally supports a tendered instruction, and if the instruction comports with the law on the subject and does not unfairly prejudice any party, we have no grounds for barring it.

To confine the determination of whether to give an instruction to an analysis of statutes is to impose an artificial restraint on the instruction formulation process. Nowhere is this artificiality more apparent than in *Cova*, the case that the majority herein overrules. In that case this court held that in light of the manner in which the government had proved its case, conspiracy to possess cocaine was a lesser included offense of conspiracy to distribute it. Conspiracy was a lesser included offense because the government offered proof that the defendant's method of supposed distribution included obtaining possession. 755 F.2d at 598. The majority of this *en banc* court concludes that *Cova*'s result could not be sustained under the element comparison test "[b]ecause it is possible for persons acquiring lawful possession to conspire to distribute," an occurrence that is probably rare but, more significantly, is completely alien to the government's theory in *Cova. See supra* n. 8. In plain terms, had the "elements" test been applied in *Cova*, the government would have lost a case that it had proved for a reason that had nothing to do with the case itself.

The test applied in *Cova* does not really change the question to be asked under Rule 31(c) in determining whether an instruction on a lesser offense should be given; rather, it simply expands the scope of the inquiry undertaken in answering that question. After all, it is the indict-

ment that delimits the "offense charged" by the government in a particular case. The specific offense is further defined by the proof presented by the government at trial. Permitting consideration of the indictment and succeeding evidence, *in addition* to the elements set forth in the relevant statutes, can only lead to a more complete and accurate determination of the character of the "offense charged" in a given case, and of the lesser offenses necessarily subsumed therein. An assessment of what offenses the government has *proved* beyond those it charged can hardly be conducted without considering what the government's proof was.

The need for a complete method of determining what lesser offenses are included within a charged offense is particularly great where, as here, the statute at issue is one that can be violated in a number of ways. Indeed, the past several years have seen the enactment of a number of criminal statutes that can be violated in various ways, and that in fact are specifically predicated on violations of any number of other legal provisions. *See, e.g.,* 18 U.S.C. § 1963 (RICO); and 21 U.S.C. § 848 (Continuing Criminal Enterprise). The mail fraud statute at issue herein, 18 U.S.C. § 1341, also defines a violation in terms of other offensive conduct. It does not, however, attempt to limit the specific varieties of pertinent conduct in order to afford the government broad authority to battle particular fields of crime. These statutes are umbrella-like and, especially where RICO and the CCE statute are concerned, carry extensive penalties. They are exactly the type of offenses for which consideration of lesser offenses is appropriate under Rule 31(c), but it is hard to imagine how any lesser included offense could ever be considered under the elements test, precisely because these "greater" offenses are so broadly defined. The lesser offense, because of its specific nature, will always contain elements not necessary for conviction under the broader statute. It is this exact concern that recently led a panel of the Tenth Circuit, in three separate opinions, to conclude that both the "elements" test and the "inherent relationship" test

are valid, and that the use of each should be dictated by the nature of the individual case. *United States v. Cooper*, 812 F.2d 1283, 1285–86 (10th Cir.1987); *id.* at 1287 (Baldock, J., concurring); *id.* at 1289 (McKay, J., concurring and dissenting).

The majority also decries the "inherent relationship" test because it necessarily results in the abandonment of the rule of "mutuality," which allows one party to request an instruction on a lesser included offense only if the other party also could have done so. This rule is inconsistent with a test for lesser included offenses that takes into account the evidence introduced at trial because the government is not permitted to alter the charges contained in the indictment when it submits them to the trier of fact if such alteration would prejudice the defendant, *i.e.* (as is relevant here) if the original indictment did not put the defendant on notice of the possibility of the alternate charge. *See generally Stirone v. United States*, 361 U.S. 212, 215–18, 80 S.Ct. 270, 272–74, 4 L.Ed.2d 252 (1960); *United States v. Cina*, 699 F.2d 853, 857–58 (7th Cir.1983). This latter rule, it should be noted, is the product of concerns for fairness at trial and the recognition of the role of an indictment in informing a defendant of the nature of the charges against him, as opposed to any specific concern for the relationship of the offenses to one another. The *Whitaker* court, in formulating the "inherent relationship" test, recognized that these principles of fairness would be violated if the government were permitted to submit an alternative charge to the jury that, although supported by the trial record, was not sufficiently foreshadowed by the indictment. Accordingly, that court

determined that the principle of mutuality should be "dispens[ed] with" so that the "inherent relationship" test could be applied. 447 F.2d at 320–22.

I agree with the *Whitaker* court's conclusion that the principle of mutuality is not necessary to the fair administration of justice and that it is properly discarded in favor of the "inherent relationship" test. In an ideal world, where all lawyers would be omniscient, *both* sides would be able to request instructions on lesser offenses based on the full trial record, which would have been anticipated before trial by omniscient defense counsel. In the real world, however, fairness requires that the prosecution be allowed to request only instructions that could fairly have been expected prior to trial. Defendants should be allowed to request instructions based on all the information available to them at the time of the request, including the trial record, thereby waiving any claim that *they* were not on notice. It may be, as the *Whitaker* court concluded, that this distinction gives no unfair advantage to defendants over prosecutors because prosecutors, who bear the burden of proof, will be able to assess the likely state of the record in advance and make their charging decisions accordingly. 447 F.2d at 321. Even if there is some advantage gained by defendants due to the abandonment of mutuality, that advantage is outweighed by the interests of justice that favor continued adherence to the "inherent relationship" test. This is hardly the only area of criminal trial law in which different rights accrue to the two respective sides.[1]

## II.

I turn now to an evaluation of the instant case under the test originally formulated in

---

1. The majority also opines that it "seems desirable" that the same test be used for determining whether a lesser offense instruction should be given and for determining whether cumulative punishment and/or separate trial is permissible on two charged offenses. *Supra* p. 390. I do not see why this identity is required. If a more expansive test is used for instruction purposes, the result will be that in some cases both instructions will be allowed where the two offenses could be punished cumulatively or tried separately, *i.e.* where they are "separate" offenses under the elements test. I do not foresee any undesirable consequences flowing from this eventuality. If a defendant in such a case is

acquitted on both charges he cannot be retried on either, not because of their relationship but because the acquittal itself acts as a bar. The same is true if the defendant is only convicted of the lesser offense; he could not be retried on the greater because his lesser conviction represents an implied acquittal on the greater charge. If he is convicted of the greater offense there is a *theoretical* possibility that the government could retry him on the lesser charge (because the jury never considered it), but this is highly unlikely. Of course, in a case such as the one I have just described the prosecution presumably would be free to charge both offenses initially and to seek consecutive sentences thereon.

*Whitaker* and refined by this court in *Cova* and several preceding cases, as well as in the panel opinion in this case. A comparison of the elements of the two crimes, mail fraud and odometer alteration, reveals (as the majority concludes) that the latter does not fall within the former as they are defined in the statute; proof of odometer alteration is not an element of mail fraud. In fact, no particular crime or unlawful conduct (or, for that matter, particular lawful conduct) is proscribed by the mail fraud statute with the exception of the act of mailing or causing matter to be mailed. This illustrates an earlier point, *i.e.* that statutes like the mail fraud provision, broadly drafted to encompass whole classes of illegal activity, will have few if any lesser included offenses under the elements test. Nevertheless it is clear to me that when the indictment and trial record are taken into account, the offense of odometer tampering should be considered a lesser included offense of mail fraud in this case.

In the instant case, the mailings that were the subject of the charges against the defendant were not separate from the fraudulent *acts* of which he was accused, but followed those acts both logically and chronologically. The mailings of the title applications by the defrauded car dealers, which the government claimed were caused by the defendant, were the direct result of the sales of altered cars. These sales were in turn the result of the odometer alterations that the defendant now asserts are lesser included offenses. As the government proved *this* case, it *had* to prove odometer tampering because tampering led to sale, which led to mailing. Had the charged mailings occurred before the tampering and/or in furtherance of the scheme (*e.g.* a letter from defendant to a confederate instructing him on tampering procedures or to a dealer proposing a fraudulent

sale), it would not have been necessary to prove any fraudulent conduct beyond that of devising the scheme.[2] As is frequently the case, though, the government proved fraud in this instance by proving execution. In this case it *had* to prove execution because the charged mailings would not have occurred if the fraud had not been carried out. In this case, therefore, "proof of the lesser offense [was] necessarily presented as part of the showing of the commission of the greater offense." *Whitaker*, 447 F.2d at 319 (footnote omitted).

### III.

The conclusion that odometer tampering should be considered as a lesser included offense of mail fraud in this case does not complete the inquiry necessary to determine whether an odometer tampering instruction should have been given. Even if a lesser offense is included in a greater offense (either under the majority's test or under the *Cova* test), a lesser offense instruction should not be given unless the evidence permits the jury "rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973). *See also United States v. Medina*, 755 F.2d 1269, 1273 (7th Cir.1985). As Judge Swygert pointed out in his original panel opinion, this requirement serves two functions: it prevents a defendant from using a lesser offense instruction simply as a device to allow him to ask for mercy from the jury, and it preserves the district judge's domain over questions of law and the jury's over questions of fact. 776 F.2d at 1371–72. In the present case the defendant presented at trial a rational basis upon which the jury could have found him guilty of odometer tampering but not guilty of mail fraud.

---

**2.** In view of this analysis, the original panel opinion may have gone farther than necessary in declaring generally that "there is an inherent relationship between mail fraud and the 'fraud' that underlies the mail fraud offenses." 776 F.2d at 1371. This may not always be the case, as the illustration in the text suggests. The analysis this court applied in *Cova* reflects, in my view, the correct use of information beyond the mere statutory elements by concentrating on the case as charged and tried, even though this may reflect some difference with the *Whitaker* court's formulation. There is really no need to discuss in the context of jury instructions how a prosecutor would "generally" charge or prove mail fraud when a black-and-white indictment and a real evidentiary record are available.

The district court therefore erred in denying the defendant's request for the odometer tampering instruction.

At the close of the government's case, the defendant moved for a directed verdict of acquittal, basing his motion in part on *United States v. Galloway*, 664 F.2d 161 (7th Cir.1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982), a case that concerned a nearly identical mail fraud scheme. In *Galloway* the defendant argued that his conviction under the mail fraud statute was precluded by the fact that the title documents mailed by the car dealers actually led to his capture, *i.e.* that they were counterproductive to rather than in furtherance of his fraudulent scheme. This court disagreed, concluding that the mailings were necessary to complete the retail sale of the automobiles and that they could not therefore be considered counterproductive to the scheme. 664 F.2d at 165, *distinguishing United States v. Maze*, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974). In *Galloway*, however, the title applications that were contained in the unlawful mailings did not include odometer readings because none were required. This court noted that "[s]uch a requirement, of course, might have made detection of the scheme more likely." 664 F.2d at 165 n. 7.

In his motion for a directed verdict, the defendant argued that the odometer readings in the title forms mailed in his case (the existence and inclusion of which were not disputed) made them counterproductive to his scheme as a matter of law. The district court correctly denied the motion, holding that whether the mailings (with readings included) were so counterproductive to the scheme that they could not fairly be said to have been in its furtherance was a question for the jury.[3] It is that holding, however, that required the court to grant the defendant's request for an odometer tampering instruction. The defendant himself conceded that he had tampered with the odometers. It was therefore a rational possibility that the jury

could have convicted the defendant of odometer tampering while acquitting him of mail fraud because it found the mailing of the title forms inimical to the fraudulent car sale scheme. Because this rational possibility existed based on the record assembled at trial, the defendant was entitled to a lesser instruction on odometer tampering.

The test adopted today by the majority for determining the propriety of lesser offense instructions has one virtue: it is the simpler of the two to apply. In the end, though, it disserves the purpose for which such instructions are allowed by separating the inquiry from its proper foundation. That the *Cova* test is more complex is not so much the result of its own inherent difficulty as of the necessary complexity of trials. Where jury instructions are concerned, accuracy has always been the goal, both in the law as they state it and in the analysis of their support in trial records. I see no reason, either in Rule 31(c) or elsewhere, to turn to an antiseptic and unworldly formula, one which will, I believe, come to hinder both defense and prosecutorial efforts. Nowhere is this possibility made clearer than in *Cova*, the case that is overruled today. Accordingly I respectfully dissent from the affirmance of the defendant's conviction.

---

3. Trial Transcript, p. 114. In his closing argument to the jury, defendant's counsel in fact argued that the mailings actually endangered the scheme to the point where they could not be considered "in furtherance." *Id.* at p. 173.